UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| VACHE HOVHANNISYAN, | |
|---|---|
| Petitioner, | 17 Cr. 350 (LAP) |
| -against- | 19 Civ. 3624 (LAP) |
| UNITED STATES OF AMERICA, | MEMORANDUM AND ORDER |
| Respondent. | |

LORETTA A. PRESKA, Senior United States District Judge:

    Petitioner Vache Hovhannisyan ("Mr. Hovhannisyan") seeks a writ, pursuant to 28 U.S.C. § 2255, to vacate his sentence following a guilty plea in the United States District Court, Southern District of New York. (Motion To Vacate Pursuant To 28 U.S.C. § 2255 On Behalf Of Vache Hovhannisyan ("Pet. Mot."), dated Apr. 22, 2019 [dkt. no. 1141].) Mr. Hovhannisyan pleaded guilty to participating in a conspiracy to conduct the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d). (June 15, 2018 Sentencing Hearing Transcript ("Sentencing Tr."), dated Jul. 17, 2018 [dkt. no. 921], at 2.) Based on Mr. Hovhannisyan's plea, Judge Katherine B. Forrest sentenced Petitioner to a term of 48 months' imprisonment, followed by 2 years' supervised release, and imposed a mandatory $100 special assessment. (Sentencing Tr. at 12-14.)

Mr. Hovhannisyan argues that his counsel was ineffective on a number of grounds. For the following reasons, the Petition is DENIED.

BACKGROUND

On June 6, 2017, based on evidence developed by the United States Attorney's Office for the Southern District of New York, a grand jury returned an indictment charging Mr. Hovhannisyan and twenty-six others with racketeering conspiracy and related crimes as part of the criminal Shulaya Enterprise. The indictment specifically charged Mr. Hovhannisyan in connection with two categories of predicate crimes: the use of false state identification documents to negotiate checks drawn on various victim banks, and a cargo theft scheme. (See Letter Response in Opposition by USA to Petitioner's § 2255 motion ("Opp."), dated May 2, 2019 [dkt. no. 1148].)

Following Mr. Hovhannisyan's arrest, the Government began discussions about a potential plea agreement with Mr. Hovhannisyan's counsel, Bradley Henry, Esq. On February 9, 2018, after multiple rounds of negotiations, the Government tendered Mr. Hovhannisyan its first and only proposed plea agreement, which would become the parties' executed plea agreement. (See Adams Decl., Opp. Exhibit A). Accordingly, in an appearance before Judge Forrest on February 20, 2018, Mr. Hovhannisyan entered into a written plea agreement with the Government as to a single count of

2

racketeering conspiracy involving two predicate acts: a conspiracy to commit interstate cargo theft and the sale of such stolen cargo, in violation of 18 U.S.C. §§ 371, 2314, and 2315; and a conspiracy to commit fraud relating to identification documents, in violation of 18 U.S.C. § 1028(f). (February 20, 2018 Change of Plea Hearing Transcript ("Plea Tr."), dated Mar. 19, 2018 [dkt. no. 623]).

At the plea hearing, Mr. Hovhannisyan, after being placed under oath, engaged into a colloquy with the Court, consistent with the requirements of Fed. R. Crim. P. 11. (Plea Tr. at 4). Specifically, Judge Forrest confirmed that Mr. Hovhannisyan had the capacity to understand the proceedings, that he felt he "had enough time to speak with Mr. Henry about the plea agreement and the terms of the plea agreement," that he understood the terms of the plea agreement prior to signing, and that he understood the parties' stipulations with respect to the applicable Sentencing Guidelines calculation. (Id. at 6-7, 8, 12, 16-17.)

The Court then turned to Mr. Hovhannisyan's allocution, whereupon he admitted to the conduct that made him guilty of the charged offense. Specifically, Mr. Hovhannisyan admitted under oath to the following: he had agreed with individuals involved with the Shulaya Enterprise "to buy or sell items from cargo shipments taken by the group and using fake IDs to cash checks; he had entered such an agreement while understanding the purpose of the group was to engage in fraudulent activity for monetary gain;

3

and he had been aware that he or his coconspirators were in possession of five or more fake IDs to be used in the check cashing scheme. (Id. at 25-27.) Following this, Judge Forrest accepted Mr. Hovhannisyan's plea of guilty to Count One of the Indictment.

On June 15, 2018, Mr. Hovhannisyan appeared before Judge Forrest again for a sentencing hearing. Prior to this hearing, the Probation Department had prepared a presentence investigation report ("PSR") that, among other things, included an independent Guidelines calculation that differed in part from the parties' stipulated Guidelines analysis.[1] Notably, however, neither the Court nor either of the parties adopted the PSR's guidelines analysis or its role adjustment. (See generally Sentencing Tr.) The Court reviewed the particulars of Mr. Hovhannisyan's conduct, noting his production and distribution of false identifications as such conduct pertained solely to the check-cashing scheme and the cargo scheme but made no reference to or suggestion of identity theft. (Sentencing Tr. at 11.) Before imposing its sentence, the Court asked whether Mr. Hovhannisyan wished to make any statement, whereupon he made the following remarks: "I just want to say I'm really sorry for what I did. That's all I can say. I apologize." (Sentencing Tr. at 9.) The Court then sentenced Mr. Hovhannisyan

---

[1] The PSR calculation differed based on a difference in the PSR's "grouping" analysis and the PSR's inclusion of a two-level enhancement for acting as a supervisor. See U.S.S.G. § 3B1.1(c); PSR ¶¶ 25-40.

4

to 48 months' imprisonment, a term of imprisonment that fell within the parties' stipulated Guidelines sentencing range.

## LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel, a defendant must overcome the "strong presumption" that his counsel's conduct was reasonable and show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-90 (1984). The defendant must do more than "show that the errors had some conceivable effect on the outcome of the proceeding." Id.; see also United States v. Acevedo, 229 F.3d 350, 356 (2d Cir. 2000).

The defendant must also "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Only if the defendant meets his burden on both of these elements may a reviewing court conclude that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the defendant was, as a result, deprived of a fair proceeding. Strickland, 466 U.S. at 687.

To prevail on a claim of ineffective assistance of counsel in connection with a plea offer, a defendant must show that counsel's performance was deficient and that he was, in fact, prejudiced by

5

that substandard performance. See Lafler v. Cooper, 566 U.S. 156, 163 (2012). Where the defendant says he was misled by his counsel about the sentence he would receive, the critical question is whether he was "'aware of the actual sentencing possibilities and, if not, whether accurate information would have made any difference in his decision to enter a plea.'" Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (quoting Hunter v. Fogg, 616 F.2d 55, 58 (2d Cir. 1980)).

## DISCUSSION

As noted above, Mr. Hovhannisyan has made a variety of arguments in support of his Petition alleging ineffective assistance: first, that his Counsel failed adequately to investigate the evidence regarding a charge of identity theft; second, that Counsel did not challenge a sentencing enhancement based on an aggravated role; third, that Counsel failed to convey a two-year plea offer from the Government; fourth, that Counsel failed adequately to assist him at the sentencing hearing; and finally, that Counsel failed to convey the deportation consequences of the plea agreement. (Pet. Mot. at 9-16; Letter Response to Government's Opposition ("Pet. Reply"), dated Dec. 4, 2019 [dkt. no. 1226].)

With respect to the first argument, Mr. Hovhannisyan argues that Counsel's failure "to investigate the evidence regarding the identity theft charged, which enhanced Mr. Hovhannisyan's offense

6

level and consequently his sentence," was both unreasonable and prejudicial. (Pet. Mot. at 9-10). The Court rejects this claim as inconsistent with the terms of the indictment and the plea agreement. As the Government correctly asserts, neither the indictment nor the plea agreement included such a crime. (Opp. at 6.) While Predicate Act Two indeed related to a conspiracy to commit fraud relating to identification documents, it did not encompass <u>identity theft</u>, as Mr. Hovhannisyan contends. Additionally, Mr. Hovhannisyan admitted at his plea hearing that he "agreed with individuals involved with the enterprise to buy or sell items from cargo shipments taken by the group and <u>using fake IDs to cash checks</u>." (Plea Tr. at 25 (emphasis added).) Therefore, defense counsel's conduct in this context could not have risen to the level of objective unreasonableness. Moreover, in light of Mr. Hovhannisyan's admission under oath that he committed fraud relating to identification documents and has never argued otherwise, the Court finds a lack of prejudice and thus rejects this claim.

Mr. Hovhannisyan next argues that Counsel's failure "to challenge the adequacy of the court's factual findings on the § 3B1.1(c) enhancement" rendered such counsel impermissibly ineffective. (Pet. Mot. at 10-11.) However, this claim also lacks a basis in the factual and procedural record. As noted above, the plea agreement itself did not contemplate any sentencing

7

enhancement, and the Court did not incorporate any such enhancement. To the extent the PSR contemplated a sentencing enhancement for Mr. Hovhannisyan's supervisory role, it was rejected by the parties, and most importantly, by the Court. (See Sentencing Tr. at 3-4.) Accordingly, Mr. Hovhannisyan's second claim fails.

Mr. Hovhannisyan's third argument contends that his Counsel was ineffective by failing to convey in a timely fashion a two-year plea offer tendered by the Government. (Pet. Mot. at 12-13.) Mr. Hovhannisyan provides no further evidence in support of this allegation. On the other hand, the Government, supported by a sworn declaration from Assistant United States Attorney Adams, states that no such offer was ever considered or extended to defense counsel. Rather, the Government tendered just one offer: the one that became the written plea agreement. Clearly, if no such offer was ever tendered, defense counsel's conduct could not have been unreasonable. Moreover, in Judge Forrest's detailed questioning of Mr. Hovhannisyan at the plea hearing, Mr. Hovhannisyan made clear that there was nothing to suggest that "Mr. Henry had not been effective. . . ." (Plea Tr. at 21.) The Court finds Mr. Hovhannisyan's contention that he was made aware of the two-year offer "[d]uring the plea stage" inconsistent with his approval of Mr. Henry's conduct at the plea hearing. (Pet. Mot. at 13.) Therefore, Mr. Hovhannisyan's third claim must also fail.

8

Next, Mr. Hovhannisyan claims that defense counsel advised him "to remain mute before the sentencing judge," when he had wished to express remorse. (Pet. Mot. at 16.) Here too, Mr. Hovhannisyan's claim finds no basis in the record. Rather, the record indicates that the Court offered an opportunity for Mr. Hovhannisyan to speak, that he spoke on his own behalf at the sentencing hearing, and that he expressed remorse for his actions. (Sentencing Tr. at 9.). Accordingly, the record underscores that the unreasonableness prong of the Strickland test has not been met. Moreover, the Court carefully weighed all of the mitigating circumstances, including defense counsel's argument, letters submitted by Mr. Hovhannisyan, and Mr. Hovhannisyan's statement at the hearing, before imposing its sentence, thus defeating the prejudice prong as well. (Id. at 2,7.) Accordingly, the Court rejects Mr. Hovhannisyan's fourth claim.

Finally, in a letter to the Court dated December 4, 2019, Mr. Hovhannisyan's new attorney, Alkistis G. Meimaris, Esq., alleged that Mr. Henry failed to tell Mr. Hovhannisyan his plea agreement would render him subject to deportation. (Pet. Reply at 1.) However, the plea agreement itself, which Mr. Hovhannisyan signed, states that "[t]he defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory, and that, at a minimum, he is at risk of

being deported." (Plea Agreement, Opp. Exihibit B, at 5-6.) Additionally, Mr. Hovhannisyan confirmed to the Court at his plea hearing that he understood the presumptively mandatory deportation that came with his guilty plea and conviction and that he "discussed the possible immigration consequences, including deportation," with his lawyer, Mr. Henry. (Plea Tr. at 5, 21-22.) Mr. Hovhannisyan's final claim of ineffective assistance of counsel thus fails as well.

## CONCLUSION

For the foregoing reasons, Vache Hovhannisyan's motion to vacate pursuant to 28 U.S.C. § 2255 [dkt. no. 1141] is denied in its entirety. Because the Court finds that Mr. Hovhannisyan has not established a violation of his constitutional rights, a certificate of appealability will not issue.

**SO ORDERED.**

Dated: New York, New York
April 14, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge